UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| AMIN HUSSAIN A. ALABDULAZIZ, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:26-CV-178-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| JEFF TINDALL, et al., | ) | **ORDER** |
| | ) | |
| Respondents. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court the Petition for Habeas Corpus filed by Petitioner Amin Hussain A. Alabdulaziz. [R. 1]. Petitioner alleges that the respondents—which include Jeff Tindall, Jailer of the Oldham County Detention Center; Samuel Olson, Field Office Director of the Chicago Field Office, U.S. Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); and Pamela Bondi, United States Attorney General—have violated his due process rights under the Fifth Amendment and the Administrative Procedure Act ("APA"). *Id.* The Court issued an Order to Show Cause, setting an evidentiary hearing date and establishing a briefing schedule. [R. 5]. Respondents filed a response. [R. 9]. The parties then filed a Joint Motion to Cancel Hearing, in which they agreed to cancel the evidentiary hearing and proceed on their briefs. [R. 10]. The Court granted that motion. [R. 12]. Petitioner has since filed his reply brief. [R. 12]. This matter is therefore fully briefed and ripe for review. For the following reasons, the Court will deny Petitioner's Petition for Writ of Habeas Corpus, [R. 1].

I.    BACKGROUND

Petitioner, a thirty-year old male, is a citizen of Saudi Arabia. [R. 1, p. 4]. He entered the

1

United States on December 29, 2014, pursuant to an F-1 non-immigrant student visa. [R. 1-1, pp. 17–18]. He came to the United States to pursue an engineering degree at Western Michigan University, which he obtained in December 2021. [R. 1, p. 4]; [R. 1-1, p. 3]. After graduating, he was authorized for "post completion Optional Practical Training" at the university, and he was issued an Employment Authorization Document for this purpose. [R. 1, p. 4]; [R. 1-1, p. 3]. As part of his Optional Practical Training, Petitioner applied for employment and, during the onboarding process, submitted fingerprints for a background check. [R. 1, p. 4]; [R. 1-1, p. 3]. His background check revealed an INTERPOL Red Notice against him, stating that he was wanted by Saudi Arabia on charges of terrorism. [R. 1, pp. 4–5]; [R. 1-1, pp. 3, 58–60]. An Interpol Red Notice "is an international alert for a wanted person, but it is not an arrest warrant." [R. 1-1, p. 59]. Petitioner's Red Notice specifically claimed that he was wanted for "[p]roviding live ammunition to a terrorist organization, targeting police officers by monitoring their movements and taking part of using a website on the Internet to communicate with terrorists to spread their propaganda." [R. 1-7, p. 2]. Petitioner believes that the Red Notice against him "is a pretext by the Saudi Arabian Government to persecute him for his political dissidence and status as a Shia religious minority." [R. 1, p. 5].

Upon learning of the Red Notice, Petitioner contacted the Federal Bureau of Investigations, which advised him to contact the Commission for Control of INTERPOL Files ("CCF"). [R. 1-1, pp. 59–60]. In April 2024, Petitioner, through counsel, contacted the CCF and requested deletion of his Red Notice records. *See, e.g.*, [R. 1, p. 5]. According to Petitioner, CCF took no further action. *See, e.g.*, *id.*

In December 2024, Petitioner filed an asylum application, "fearing persecution and torture as a political dissident who participated in peaceful protest against the Kingdom of Saudi Arabia

2

as a Shia religious minority." *Id.* at 6. His asylum interview was scheduled for July 17, 2025. *Id.* When he arrived at the offices of the U.S. Citizenship and Immigration Service for his interview, he was apprehended by ICE agents. *Id.* That same day, he was issued a warrant (I-200 form) and a Notice to Appear. [R. 1-3]. The Notice to Appear explained that Petitioner had "been admitted to the United States, but [is] removable" because he was initially admitted as a nonimmigrant student with authorization to remain in the United States for a temporary period not to exceed March 12, 2025, but he had remained in the United States beyond that date. *Id.* at 1.

On July 22, 2025, Petitioner filed a Motion for Bond Redetermination. *See, e.g.*, [R. 1, p. 7]. A hearing on the motion was then held the following day before Immigration Judge ("IJ") Kelly Johnson.[1] *Id.* At the hearing, Petitioner, through counsel, presented evidence and argument relating to his case, including information relating to his Red Notice and the reasons why Petitioner believed it was unsupported. *Id.* at 7–10; *see also* [R. 1-7, p. 2]. The IJ ultimately denied bond, finding that Petitioner was a "[d]anger and in the alternative, flight risk." [R. 1-4]. On the IJ's order, a box is also "checked" for "Other," and the IJ noted, "INTERPOL – Red Notice (Saudi Arabia); charges: Terrorism." *Id.* Petitioner appealed the IJ's bond order to the Board of Immigration Appeals ("BIA"), and it remains pending. [R. 1, p. 10].

On September 11, 2025, IJ Johnson issued a "Decision of the Immigration Judge Regarding Bond," in which he explained his bond decision in more detail. [R. 1-7]. In that decision, the IJ explained the legal standard, including the alien's burden of proving that his release would not pose a danger to any person or property and that he is likely to appear for future proceedings. *Id.* at 1. The IJ also noted that he "reviewed and considered all the documents in the record from [Petitioner]," including over 350 pages of exhibits and the INTERPOL Red Notice. *Id.* at 2.

---

[1] All parties agree that Petitioner was and is detained under 8 U.S.C. § 1226(a), and he was therefore entitled to a bond hearing. *See, e.g.*, [R. 1, p. 16]; [R. 9, pp. 1, 3].

3

Ultimately, the IJ found that Petitioner has an active INTERPOL Red Notice and, as a result, he "presents a danger to persons or property and should not be released during the pendency" of his removal proceedings. *Id.* (citation omitted). In reaching this conclusion, the IJ explained that he had "considered [Petitioner's] arguments through counsel that the charges pending in Saudi Arabia are politically motivated," but he found that "the record does not support such a finding." *Id.* The IJ also found that Petitioner was a flight risk, noting that his "eligibility for relief is speculative." *Id.* (citations omitted).

On October 20, 2025, IJ Johnson ruled on the merits of Petitioner's asylum application. [R. 1-8]. In a twenty-seven-page opinion, the IJ explained his basis for denying the application. *Id.* When considering whether Petitioner had satisfied his burden of demonstrating a well-founded fear of future persecution, the IJ found that "there is insufficient evidence to show that Saudi Arabia presently has an *active* Red Notice against [Petitioner]." *Id.* at 22 (emphasis added). But, the IJ continued, even assuming that the Red Notice is active, "there is insufficient record evidence to determine that it contains fraudulent facts and is pretextual persecution." *Id.* The IJ ultimately ordered Petitioner removed to Saudi Arabia. *Id.* at 27. On November 11, 2025, Petitioner appealed that decision to the BIA, and that appeal remains pending. [R. 1, p. 13]. In the meantime, Petitioner remains detained at the Oldham County Detention Center. *See id.* at 1.

On March 12, 2026, Petitioner filed the pending Petition for Writ of Habeas Corpus. [R. 1]. He argues that his unreasonably prolonged detention violates both his substantive and procedural due process rights under the Fifth Amendment (Counts I and II), and "[t]he agency, through the Immigration Judge," made a pretextual bond determination in a manner that is arbitrary and capricious in violation of the APA. *Id.* at 15–21. The Court issued an Order to Show Cause, setting an evidentiary hearing date and establishing a briefing schedule. [R. 5]. Respondents filed a

4

response. [R. 9]. The parties then filed a Joint Motion to Cancel Hearing, in which they agreed to cancel the evidentiary hearing and proceed on their briefs. [R. 10]. The Court granted that motion. [R. 12]. Petitioner has since filed his reply brief. [R. 12]. This matter is therefore fully briefed and ripe for review.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2241, a writ of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Thus, federal courts may "issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). The right to petition for a writ of habeas corpus is "'available to every individual detained within the United States,'" *Montiel v. Raycraft*, No. 1:25-cv-1610, 2026 WL 32076, at *1 (W.D. Mich. Jan. 6, 2026) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)), including "non-citizens in immigration-related matters." *Id.* (citations omitted).

The petitioner seeking habeas relief bears the burden of proving by a preponderance of the evidence that his detention was unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022) (citation omitted).

## III.    ANALYSIS

### A.  Jurisdiction

The Court must first consider the "threshold question" of jurisdiction. *Guiracocha v. Noem*, No. 26-62-DLB, 2026 WL 622860, at *2 (Mar. 5, 2026) (citation omitted). "In the immigration context, jurisdiction centers on 8 U.S.C. § 1226(e)." *Id.* That provision states, "The Attorney

5

General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). The Supreme Court has explained that this provision prevents an alien from "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)).

However, the Supreme Court has also recognized that district courts retain jurisdiction to hear habeas petitions concerning issues that are collateral or ancillary to removal proceedings. *Jennings*, 583 U.S. at 295 ("Section 1226(e) does not preclude challenges to the statutory framework that permits [an] alien's detention without bail." (quotations omitted) (citing *Demore*, 538 U.S. at 517)). Moreover, habeas relief is available under 28 U.S.C. § 2241where a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This provision therefore confers jurisdiction on federal courts to review noncitizens' claims challenging the constitutionality of their detention during the pendency of removal proceedings. *See Demore*, 538 U.S. at 517 ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2002) ("[A]lthough the Attorney General's 'discretionary judgment . . . shall not be subject to review,' claims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.'" (quoting *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002))).

Thus, the Court must determine whether Petitioner challenges the statutory or

constitutional validity of his continued detention. As noted, he attempts to raise a claim under one statute, the APA, and asks this Court to set aside the IJ's bond decision as arbitrary, capricious, an abuse of discretion, and contrary to law. *See* [R. 1, pp. 20–21]. In response, Respondents argue that "combined habeas corpus and other civil claims [are not permitted] to proceed together in one case." [R. 9, p. 7]. Petitioner does not address this in his reply brief and instead characterizes his claims as "a challenge to the *constitutionality* of his detention." [R. 12, p. 6]. Regardless, the law is clear that, to the extent Petitioner has raised an APA claim in his petition, that claim should be severed from his habeas corpus claims and dismissed without prejudice. *See J.O.B. v. United States*, No. 3:23-cv-217, 2024 WL 4011825, at *8 (S.D. Ohio Aug. 30, 2024); *Cox v. Nord*, No. 1:23-cv-324, 2023 WL 5917523, at *1 (S.D. Ohio Aug. 24, 2023); *Winburn v. Gidley*, No. 2:18-CV-10271, 2018 WL 783489, at *2 (E.D. Mich. Feb. 7, 2018).

This leaves Petitioner's claims arising under the Fifth Amendment, relating to his procedural and substantive due process rights. True, Petitioner "couches his [p]etition in the language of a . . . constitutional critique"; however, upon closer examination, "his [p]etition ultimately takes issue with the IJ's discretionary decision to deny bond," at least in part. *Guiracocha*, 2026 WL 622860, at *2. Specifically, he argues, in part, that the IJ "failed to analyze the evidence in accordance with the law and simply made a pretextual bond determination of danger and flight risk." [R. 12, p. 4]; *see also* [R. 1, p. 10]. Indeed, he spends the bulk of his petition rehashing the evidence presented and arguments made at his bond hearing and critiquing the IJ's bond decision. [R. 1, pp. 7–13]. To the extent Petitioner attempts to attack the IJ's individual determination that Petitioner presented a danger to persons or property, or was a flight risk, and was thus not entitled to bond, the Court finds that it lacks jurisdiction over such claims. *See Guiracocha*, 2026 WL 622860, at *2.

However, to the extent Petitioner argues that his prolonged detention, *irrespective of the IJ's bond decision*, violates his Fifth Amendment rights, the Court finds that such constitutional claims are within the Court's jurisdiction. *See generally Demore*, 538 U.S. at 517; *see also* [R. 1, p. 20 ("Petitioner's continued detention has become unreasonably prolonged because his removal is not reasonably foreseeable. Petitioner's removal is not reasonably foreseeable due to the pendency of removal with delays attributable to the government, the nature of his objection to removal, the health conditions caused and/or exacerbated by his prolonged detention, and the political turmoil causing high safety risks.")].

### B. Prolonged Detention

Before considering whether Petitioner's prolonged detention violates the Fifth Amendment, the Court first considers the statutory basis for his detention. As noted above, the parties agree that Petitioner was initially detained under 8 U.S.C. § 1226(a), and that he continues to be detained under that provision. *See, e.g.*, [R. 1, p. 16]; [R. 9, pp. 1, 3]. This specific provision authorizes the Attorney General to arrest and detain aliens "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). It also authorizes the Attorney General, in his discretion, to release such aliens on bond or conditional parole. *Id.*

This provision, § 1226(a), differs significantly from § 1226(c), which mandates detention for aliens who have committed certain crimes. *See id.* § 1226(c). These provisions "also differ as to the procedural protections afforded once an alien is already detained." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022). For instance, under § 1226(a) and its implementing regulations, a detainee may request a bond hearing, wherein the detainee is given an opportunity to demonstrate by a preponderance of the evidence that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.*; *see also* 8

C.F.R. §§ 236.1(d)(1), 1003.19. At that hearing, the detainee may be represented by counsel and can submit evidence. *Rodriguez Diaz*, 53 F.4th at 1197 (citing 8 C.F.R. § 1003.19(b), *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016)). The detainee may also appeal an adverse decision to the BIA. *Id.* (citing 8 C.F.R. § 236.1(d)(3)). And on top of this initial bond proceeding, a § 1226(a) detainee may also request an additional bond hearing if there exists a material change in circumstances. *Id.* (citing 8 C.F.R. § 1003.19(e)). "By contrast, § 1226(c) on its face offers no opportunity for release on bond." *Id.*

Section 1226(a) likewise differs from 8 U.S.C. § 1231(a), which governs the detention, release, and removal of "aliens ordered removed." *See* 8 U.S.C. § 1231(a). In other words, "[o]nce an alien has a final removal order that is not subject to a judicial stay, detention authority shifts to" § 1231(a). *Rodriguez Diaz*, 53 F.4th at 1197. Under that provision, as relevant here, the alien must be removed from the United States within ninety days of "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B). During that ninety-day removal period, "the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2).

For purposes of § 1231, a removal order becomes "administratively final" "upon the earlier of (i) a determination by the [BIA] affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA]." *Al-Sadoon v. Lynch*, 586 F. Supp. 3d 713, 722 (E.D. Mich. 2022) (quoting 8 U.S.C. § 1101(a)(47)(B)). Here, because Petitioner appealed his removal order to the BIA and that appeal remains pending, his removal order is not yet administratively final. Thus, Petitioner is not yet subject to 8 U.S.C. § 1231 and instead remains detained under § 1226(a). As already noted, both parties agree on this point. *See, e.g.,* [R. 1, p. 16]; [R. 9, pp. 1, 3]. Nevertheless, in arguing that his prolonged detention violates his due process rights, Petitioner relies primarily on cases involving § 1226(c) and § 1231. *See*

*Zadvydas v. Davis*, 533 U.S. 678 (2001) (considering post-removal-period detention under § 1231); *Al-Sadoon v. Lynch*, 586 F.Supp.3d 713 (E.D. Mich. 2022) (same); *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) (considering mandatory detention under § 1226(c)); *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469 (3d Cir. 2015) (same). In other words, these cases considered the limits of prolonged detention for those aliens subject to *mandatory* detention, who were not entitled to and never received a bond hearing.[2]

Other courts that have considered due process challenges to a detainee's *discretionary* detention under § 1226(a) have applied the three-part balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1206 (collecting cases); *Marquez-Amaya v Olson*, -- F. Supp. 3d --, 2026 WL 525118, at *9 (W.D. Ky. Feb. 25, 2026). Under that framework, the Court weighs three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Regarding the first factor, Petitioner's private interest, the Court finds that this factor weighs in his favor, if only slightly. At this time, Petitioner has been detained for approximately eight months. *See generally* [R. 1]. In other contexts, e.g., mandatory detention under § 1226(c) or § 1231, courts have found that detention beyond six months becomes prolonged. *See, e.g.*,

---

[2] Moreover, many of the cases cited by Petitioner have been vacated or withdrawn. *See Sopo v. U.S. Attorney General*, 825 F.3d 1199 (11th Cir. 2016), vacated by *Sopo v. U.S. Attorney General*, 890 F.3d 952 (11th Cir. 2018); *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), withdrawn on reconsideration by *Reid v. Donelan*, Nos. 14-1270, 14-1803, 14-1823, 2018 WL 4000993 (1st Cir. 2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), *overruling recognized in Barbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274 (3d Cir. 2018).

*Rodriguez Diaz*, 53 F.4th at 1207 (collecting cases). Even though these cases do not govern Petitioner's detention, the Court "will assume that his detention qualifies as 'prolonged' in a general sense." *Id.* (citations omitted). Moreover, the respondents do not seriously dispute that Petitioner has a legitimate liberty interest under *Mathews*. *See* [R. 9, pp. 4–5].

"But it is important not to overstate the strength of [Petitioner's] showing under the first *Mathews* factor, either." *Rodriguez Diaz*, 53 F.4th at 1207. Unlike detainees subject to mandatory detention under § 1226(c) or § 1231, Petitioner received a bond hearing less than a week after being detained under § 1226(a), and he was represented by counsel and presented hundreds of pages of evidence. *See, e.g.*, [R. 1-7, p. 2]. And "a further bond hearing before an IJ was available to him throughout the period of his detention upon a showing of materially changed circumstances." *Rodriguez Diaz*, 53 F.4th at 1207 (citing 8 C.F.R. § 1003.19(e)). Moreover, the Court cannot overlook that at least some part of Petitioner's detention arises "from the fact that he chose to challenge before the BIA . . . the IJ's denial of immigration relief." *Id.* (citations omitted). Indeed, by Petitioner's logic, § 1226(a) "would be unconstitutional as to most any alien who elects to challenge a removal order, given the amount of time such a [challenge typically] takes." *Id.*

In short, "in evaluating [Petitioner's] interests under the first prong of the *Mathews* analysis, [the Court] cannot simply count his months of detention and leave it at that." *Id.* Instead, the Court "must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order." *Id.* Having considered these facts, and under the specific circumstances of this case, the Court finds that this first factor weighs only slightly in favor of Petitioner.

The Court turns next to the second *Mathews* factor, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

11

substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, pursuant to § 1226(a) and its implementing regulations, an ICE officer made an individualized custody determination when Petitioner was initially detained; Petitioner was then able to request, and did request and promptly receive, a bond hearing before an IJ, at which he was represented by counsel and presented hundred of pages of evidence; and he was then able to appeal that decision to the BIA. *See Rodriguez Diaz*, 53 F.4th at 1209; 8 C.F.R. §§ 236.1(c)(8), (d)(1), (d)(3), 1003.19(b). He was also able to pursue errors of law and constitutional questions, like due process violations, in this Court. *See, e.g.*, *Rodriguez Diaz*, 53 F.4th at 1209. And, as already noted, "throughout the course of his detention, [Petitioner] has had the right to seek an additional bond hearing if his circumstances materially change." *Id.* (citing 8 C.F.R. § 1003.19(e)). "In short, the agency's decision to detain [Petitioner] was subject to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker. These procedures ensured that the risk of erroneous deprivation would be 'relatively small.'" *Id.* at 1210. The Court therefore finds that the second *Mathews* factor weighs in favor of Respondents' position.

Lastly, the Court considers the third *Mathews* factor, "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Clearly, the government "has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore*, 538 U.S. at 518). Indeed, "[e]nforcement of our immigration law serves both a domestic law enforcement and foreign relations function," and as a result, the Supreme Court has instructed that, in a *Mathews* analysis, courts "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Id.* (quoting *Landon v. Plasencia*, 459 U.S.

21, 34 (1982)). And "[t]his is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." *Id.* By detaining such aliens, the government "seeks to 'increas[e] the chance that, if ordered removed, the aliens will be successfully removed.'" *Id.* (quoting *Demore*, 538 U.S. at 528). Moreover, as the Ninth Circuit has explained,

> These are interests of the highest order that only increase with the passage of time. The longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal. The risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent.

*Id.* at 1208 (citations omitted). Accordingly, for all of the reasons just stated, the Court finds that the government's interests in this case are "significant," *id.* at 1209, and this third factor weighs in favor of the respondents' position.

On balance, and under the specific facts of this case, the *Mathews* factors weigh in favor of Respondents, and Petitioner's detention under § 1226(a) does not violate his due process rights.

## IV.    CONCLUSION

For the reasons set forth above, the Court will deny the Petition for Writ of Habeas Corpus. [R. 1]. Accordingly, the Court being sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Petitioner's claim arising under the APA is **SEVERED** from his petition and **DISMISSED WITHOUT PREJUDICE**.

2. The Petition for Writ of Habeas Corpus, [**R. 1**], is **DENIED**.

3. A separate judgment shall issue.

This the 10th day of April, 2026.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY